1935-51 Ohio A Philip Randolph Institute et al. v. Republican National Committee et al. Arguments not to exceed 15 minutes per side. Mr. Torchinsky for the appellants. Thank you, Your Honors. May it please the Court, I have preserved three minutes for rebuttal time. The District Court in this case below never had subject matter jurisdiction. Rucher v. Common Cause is the key Supreme Court case here. And appellees fail to even mention or acknowledge its impact on this Court's decisions. The impact of this decision is clear. Because the District Court never had... In this debate about mootness, it would be helpful if both sides could let us know what is actually already public and what isn't. Sure, Your Honor. Just to finish the question. Sure. I think we get the arguments. And if the Court didn't have power to act, it couldn't issue those subpoenas. But then the question becomes, is there a live controversy to resolve? And I assume you agree that if some documents have been made public, there's not much we can do about it. In other words, if they're already out there, what can we do? So you're free to challenge that point if you wish. But my first question is just what is it that you want evidence that's been destroyed or back that's not already public? Is there something that fits that category? Yes, Your Honor. There's a number of things. The first is we'd like this Court to vacate the discovery order by the District Court because otherwise... So you're not answering my question. Answer my question. What is not public already that you want destroyed or back? So we're not asking this Court to do anything with records that are in public. Okay, so what's left? Is there something left? Yes. There were about 446 documents that were turned over as a result of the court order. 61 were used at trial. The destruction order in the protective order below only applied to the 446 minus 61 documents that were not used at trial. The 61 documents that were used at trial are not covered by the destruction order, and we're also... Let's just stop there so we understand what's going on. Yes. Would you concede that as to the 400 without the 61, the trial exhibits, that were all in good place, that there's evidence those were destroyed? That part of this is moot? Would you agree with that? The destruction piece, yes, Your Honor, but one of the things... Then what about the 61 and the ones that weren't introduced? Is that what's the live dispute? Well, Your Honor, I think what we're asking for is we're asking this Court to ameliorate the excess of jurisdiction by the district court to the best it can. We understand that the court is... We'll get to that, but just tell us what... Is there some number that within the 61 were like 40 introduced and those were public and that leaves 20 left? Your Honor, we were actually not present at trial. My understanding is that there were 61 of the 446 documents that were used at trial. It is unclear to me how many... You said some weren't introduced and therefore not made public. That's what I heard you to just say, no? Your Honor, that I'm not sure about because we weren't actually present at trial. I don't care. You find out from the people that were at trial. But I believe 61 were used at trial, and those are... We agree that those are in the public record. But the protective order didn't require the destruction of those 61 that remain in the presence of plaintiffs and their counsel. But why do we care about their having 61 documents that are now public? Your Honor, let me be clear what we care about here. We care about, you know, what's contained in not only the 440... In all of the 446 documents is strategic internal information about how the RNC, the NRCC, and Mr. Kincaid approach... Those have not already been made public. Well, the information in the 300 and some odd documents that were never introduced at trial has not been made public. But... You said those were destroyed. They were destroyed, but it doesn't mean they weren't reviewed by counsel and their agents here. What are we supposed to do? I'm wondering what the heck we are doing here. I mean, the case has been dismissed, right? Yes, it's been vacated. The documents have been destroyed. What are we doing here? Well, a couple of things, Your Honor. First, we'd like to have the discovery order vacated. It's a discovery order overriding... It's been dismissed. You have to show it's not moot for us to get there. Yes, Your Honor. And I don't believe it is moot because when you look at... Two things. When you look at vacator, the notion that this decision that overrode our client's asserted First Amendment privilege is still out there and can be held used against our clients in future cases. And I'll point out... We don't normally reverse and review cases that have been dismissed. Is this what you want us to do just for precedential purposes? Well, that's part of it. But, Your Honor, what was reversed and vacated... The whole business of being moot. But, Your Honor... This isn't alive anymore. It's a hypothetical controversy at this point. Well, maybe I'm not getting your point. It's a way of thinking about this that there's not just the final judgment that the court doesn't have authority over gerrymandering under the 14th Amendment. Yes. There's that embedded in that was a prior discovery order that was interlocutory. You tried to appeal it. You weren't allowed to. No final judgment. And once you don't get to review that decision on appeal because of mootness, undermensing where you vacate, is that the idea? That you have to vacate the order? So we don't have an opinion about right or wrong, but we just vacate it as part of what happens with vacating the case on appeal. That's correct because otherwise this decision can be... And there are other cases that involve the RNC, the NRCC, and redistricting. There have been state court cases in Pennsylvania and North Carolina where subpoenas were issued to national party committees. It would make life so much easier for us if you could just point to one document that's not public. That just simplifies the whole thing. That just proves it's not moot. That then allows us to say, well, if it's not moot, we are allowed to decide that if the court didn't have authority to resolve the underlying case, it obviously didn't have authority to issue the discovery order, end of story. So you keep avoiding the simplest path. And I'm speaking only for myself, but my experience is court of appeals judges love the simplest path. And you just want to take us over mountains and through swamps, and I'll do it, but it makes me very skeptical. Your Honor, I'm not asking you to take us into swamps. If there was a district court order that ordered Coke to turn over its secret formula to Pepsi, and then a court said, you know what, district court didn't have the ability or didn't have subject matter jurisdiction over the case in which it ordered Coke to turn over its secret formula to Pepsi, a subsequent order from an appeals court saying, hey, Pepsi, you can't use that information in the future, even though it was turned over to the other side, would be incredibly helpful to Coke. That's kind of where we are. The information about how the RNC and the NRCC approached analysis of redistricting is in the hands of people that have sued and subpoenaed the RNC and the NRCC regularly in all kinds of cases. And so what we're seeking is a vacator of the order that was clearly in excess of jurisdiction because the court didn't have subject matter jurisdiction in the first place. The vacator is important to us. And, you know, I point to Munsingware. I also point to what the Seventh Circuit did in the partisan gerrymandering case out of Wisconsin. In that case, the three-judge court stayed its hand when it understood that the Supreme Court was going to hear Rucho scheduled trial for July, allowed discovery to go on, ordered a deposition of the Speaker of the House of the Wisconsin legislature. The Seventh Circuit actually honored petition for mandamus, unlike what happened in our case, stayed that deposition. And then after Rucho was ordered, granted a Munsingware vacator. I think out of curiosity, am I right in understanding your argument that with all of these documents, you're happy with an order that just says this court vacated the underlying three-judgment decision in light of Rucho that mooted any appeals of interlocutory decisions because those appeals have been mooted and in this case, the appellant didn't have a chance to see whether they were right or not. Those orders have to be vacated as well, period, end of story. That satisfies you? A vacator of the lower court opinions and there were two. Just discovery orders. Just give me a straight answer. Yes. Vacating the discovery orders would give relief to our client because then those – No explanation. Nothing more than just vacated under Munsingware because no one had a chance to decide whether they were correctly issued. We're asking for more than that, but that would give us relief here and that's why this case isn't moot before you. What more do you want? I would think that we could enter an order like that. I would think probably the other side would not even object, but what more do you want? What more do you want? Well, we're asking for a couple of things. Again, going back to my Coke-Pepsi analogy, the RNC and the NRCC's political opponents now have – they had access to a whole bunch of internal information. We would like to know who had that information. That's one of the – Well, I can't figure out with this line of argument. Are you making the point that you don't trust when they say they were destroyed, they were destroyed? Are you making the point they haven't told you who had access to them and whether they destroyed copies? Is it a copying point or is it a knowledge point? It's a knowledge point. They have not told us who had access to them. All they sent was one letter that said we've complied with the order and destroyed it. We don't know how widely circulated the RNC's and NRCC's proprietary information was among the plaintiffs and their counsel and their agents. All we know is they said they've destroyed it. I don't understand where I'm coming from. I'm just struggling how a court can fix the knowledge point. I feel like a court could fix the copies of the documents point. That seems to be Church of Scientology. We can do that. But I'm really struggling with how we get beyond that. Are you comfortable on the documents point, put knowledge to the side? Are you comfortable that everybody's playing straight up, that any copies have been destroyed? I am not questioning the other side's counsel when they say they've destroyed the documents that were not used at trial. They're all copies. Right. But we believe that they are still in possession of the documents that were used at trial. We would like those destroyed and we would like to know who had the other documents, who had access to them. Again, I go back to my Coca-Cola-Pepsi analogy. If the district court didn't have jurisdiction to turn that over, it would be incredibly beneficial to Coca-Cola to know who at Pepsi had read their secret recipe, so that in the future when there's other cases and other issues that come up, they know who had access to that information. Simply destroying the document doesn't destroy the knowledge of the people that had access to those documents and read those documents. I'm not sure you have a lot of controversy. I mean, you would like to have all this stuff and it would be nice and all this stuff, but we deal with live cases and controversies and not things that might be convenient for you or helpful for you. Well, Your Honor, we would also, and we made this clear. What would you do with the information? So Joe Smith in Montana read this document 375, and so now you know Joe Smith read document 375. What happens next? And when Joe Smith shows up as an expert or a witness in a future redistricting case where the RNC and the NRCC are on the other side, knowing that they had information from this case would be incredibly helpful. And I also want to point out. You're not helping. That's not a great answer because in that other case, it's a very simple question. Well, Your Honor. Did you happen to look at the document 375 in the Ohio litigation? So I don't know. But, Your Honor, I mean. There's nothing. There's no relief. There's nothing we can do for you. There absolutely is. In the world of people that might have had access to that document, we could not possibly know how widely these documents were circulated without the information that we're seeking. And I also want to point out. Slow down. Sure. And say sensible things. Okay? That would be really helpful. You just gave one example. Knowing Joe Smith. Yes. I responded by saying if Joe Smith uses the information and you think somehow fraudulently or unfairly, in that next case, a court will be in a position to do something about it. Okay? So that does not give us a remedy. And that is part of the whole Article III redressability. Give me something else that does not use Coke, Pepsi and talks about these documents. Sure. We would like to seek attorney's fees and costs involved in the production of these documents. And we can't do that without the vacator from this court to be able to go back to the district court. There were tens of thousands of dollars worth of fees just for producing these documents, for doing the searches, starting with the $23,000 that they gave us that were responsive to the search terms, narrowing down to the $500, producing the copies for the court. There's actual monetary damages that our clients incurred in the course of this litigation. In a case where the court had no subject matter jurisdiction. I don't know if I should know this, but is there already a pending fee request out there? No, because there's no order vacating that opinion. We're asking for a vacator here. Do you have that before us, a denial of your attorney fees or something? We did not. We filed the notice of the – Normally, you know, we're an appellate court. And normally we review a decision from a district court. And you claim the decision was wrong and erroneous for these reasons. And you don't raise new issues in front of us without even a motion, without a ruling below. And yeah, you might want to – What are we doing here today? What have you requested in your relief? I also thought – forgive me for interrupting – but I also thought it was black-letter law that fees and costs wouldn't solve an Article III problem. Am I misremembering that? I thought that was a black-letter principle. In other words, if you want to bring your own fees claim later, go for it. But I didn't think that was what kept a moot dispute alive. Am I forgetting something? But, Your Honor, without vacator here, going back to a district court – Just answer that question. Am I forgetting something about whether a fees and costs motion that may be filed down the road deals with a mootness problem today? If you don't know, just say I don't know. I don't know, Your Honor. Okay, so I'm not sure either. Okay. But I'm not sure this prejudices you. Doesn't the dismissal of a case vacate all the discovery orders that were in the case? I mean isn't the dismissal itself a vacator? Your Honor – I mean isn't it redundant if we issue an order vacating something on a dismissed case? No, Your Honor, because I don't – the Supreme Court, when it issued the order vacating the decision of the three-judge panel, the Supreme Court's jurisdiction is only over, under 2284, the Supreme Court's jurisdiction is only over orders granting or denying injunctions. In this case, the three-judge district court granted – The three-judge district court dismissed the case, right? No, the Supreme Court vacated and remanded with instructions to dismiss. The three-judge court dismissed. But I'm not aware of any case law that stands for the proposition that dismissal at the end of a case vacates any orders leading up to the final order. How will this still be in effect when the case is dismissed? I mean they have to be in effect. But in this particular case, Your Honor, we're a third party here, and frankly when you look in Lexis or Westlaw at the discovery orders in this case, there's no flag that tells you because the later final judgment was vacated by the Supreme Court that therefore the discovery – the interim discovery orders are also vacated. I don't know of any case law that stands for that proposition, but if there is, I would love to know it. But we're not aware of that. So Judge Guy, do you have any questions? I don't. Okay, so you'll get your full rebuttal. Let's hear from the other side. Thank you. Have you tried to work this out? I mean normally before a case comes to us, we'll refer things to mediation. We'll ask counsel to talk to one another and say, you know, can this thing be resolved without using our time, our efforts, everything else. I mean have you guys tried to resolve this thing? Other than following the protective order and destroying all the non-public documents. And asking them what can we do to – I mean rather than come all the way to Cincinnati and argue a case that appears moot to me, I mean. Your Honor, we agree entirely it's moot. The parties haven't sought anything further than deleting the documents as required, allowing appellants to know that. As to your question. It's a reaction to the Munsingware point that, you know, they did want to appeal this. They're a third party. They were not allowed to, no final judgment. And now they can't because it's mooted. And so Munsingware says when something gets mooted on appeal, part of the remedy is to vacate the underlying order. So not making an assessment of its rightness or wrongness but just vacating it. Are you comfortable with that? No, Your Honor. Certainly Munsingware has application here. But even Munsingware, they did not vacate the order below. What that case tells us is that a party who caused the intervening mootness, which appellants did by agreeing to the 61 trial exhibits and the Kincaid deposition becoming public judicial documents. After trying to appeal. I mean, it's hard to say this was their fault. Well, they certainly were able to continue to invoke the protective order. If they had done so. What's the practical explanation for why this order? I mean, it seems really odd to me to think your side is going to rely on that order in future cases when the obvious response is the court had no authority to issue it. Certainly, Your Honor. But following the precedence of the Supreme Court in U.S. Bank Corp., in which Justice Scalia wrote that seeking vacateur is an extraordinary equitable remedy. What was the norm when something gets mooted on appeal? I mean, tell me. That's what the blacklist in my mind was. In U.S. Bank Corp., Justice Scalia said just the opposite and said the additional language in Munsingware was dicta regarding that it was the usual practice. And what the court looks to is what caused the intervening mootness in order to determine whether or not an underlying order should be vacated or not. How does it hurt you? What's the injury to your clients of vacating the order? Well, it's an injury to the public's general interest in the orderly operation of the federal courts. And that's exactly what is laid out in U.S. Bank Corp., which is sort of the seminal case. What's the injury to your client? The injury to your? Your client. My clients, Your Honor. I don't think there's an express injury to the clients. It's a question of the equities, and the equities here and the clients as part of the public have an interest in the public documents remaining public. So back to Judge Griffin's point, if we asked you guys to talk to our mediator, you don't think you could mediate this point? I think the case is moot, and so there's nothing for this court to do. I know that's what you want. I get it. Mediation usually leads to compromise, and it's very strange not to have to give something up. I'm hearing you say this is not something you'd be willing to give up, even though it doesn't affect your client. In general, I think the question of mootness should just end the matter, and that in Bank Corp., the Supreme Court said that decisions of the federal courts don't belong only to the litigants. One thing I didn't understand of the trial exhibits, how exactly that worked at the trial court. So quite often what will happen is you identify your trial exhibits, so 61 are identified, and they're out of the 61 you care about. It doesn't mean everything's introduced. Were all 61 introduced? They were, Your Honor. These were all admitted exhibits and are part of the public judicial record. And no restriction on anyone seeing them? No. Appellants had the opportunity prior to our submission of them as documents to seek restrictions, and they expressly declined to do so. None of these were sealed? No, Your Honors. And are they still on the record? Because the reason I ask is I don't think on PACER, I think you can get access to some of these, but not all of them. That's what had me puzzled what was going on. That's correct, Your Honor. If other parties or the press wanted to see them, they would have to access them through the office of the clerk in the Southern District of Ohio. Not the clerk's office, but they're available at the clerk's office. Yes, Your Honors. And that's what the clerk wouldn't have had any reason to say, well, wait a second, we only give those out after we talk to the parties or this third party. No, because they're public judicial records, and this court in Chain Group, for example, has been extremely clear that the public has an overriding interest, even in cases where there's no longer any interest in the actual outcome of the litigation, that the interest of the public is focused not just on the result, but on the conduct giving rise. And it's for those reasons that this court has been extremely protective of access to public judicial records. I don't know if it's these representations from you or your clients or all of them together. So I get the 61, and so there's the 400-plus, or I guess it's 300-something remaining. What have been the representations that have been made about those? The representations that have been made about those is that they have all been securely destroyed. All copies? All copies, yes, Your Honor, because all of the documents that didn't become public judicial records remain subject to the protective order throughout. And this court and the other federal courts won't assume that counsel would not comply with duly entered orders of the court. And the representations we made to appellants that they've been destroyed and to this court submitting them with the federal rule of appellate procedure 28J letter was made with full knowledge of our professional responsibilities, of candor towards the court, and truthfulness towards other parties. And if they show up in some other place, people have something to respond about. Yes, Your Honor. If the court has no further questions, appellees will rest, but the appeal should be dismissed as moot. Judge Guy, do you have any questions? Just a little curiosity question. Counsel, do you object to the request of making known who these documents were distributed to? We do, Your Honor, because that does not redress anything. This court, this is a simple matter of the reach of Article 3, cannot order anything that doesn't redress an injury. And so while, as Justice Scalia made clear in the Steel Company case, which we cite, while the certain things appellants seek might make them happier, this psychic satisfaction, as he calls it, isn't acceptable to create an Article 3 controversy. And to answer your question. What about the problem? So I'm making up the facts, but correct them only if it makes a difference. Let's say five people on your side get the documents. They then, in terms of filing a letter explaining that they've all been destroyed, it's only those five that say they've all been destroyed. And what they do is they know the ones they had have been destroyed. They then know the people they gave copies to. They get those back. They know they've been destroyed. But they don't know, and they can't represent, whether the people they gave them to made copies and gave them to somebody else. So how do you know the people that get copies didn't make copies? Where is that representation? That seems to be the reason why it's fair to ask who got them. I mean, because you're right. The whole point here is you can rely on lawyer representations and client representations because they'll be in trouble with fraud and all this other stuff. But here it's quite possible the representation they want the most has not been given. Your Honor, but that would assume that there was noncompliance with the protective order throughout because they were only allowed to be used in this litigation and were only used by the parties listed. No, I know, but that would include the whole, say, a law firm. It obviously includes the whole law firm and anyone working on it, including this paralegal. And the paralegal is not saying I didn't make a copy. And if the paralegal makes a copy, it goes to somebody else, all the people that signed this declaration would not technically have lied. The only way to know whether this representation matters is whether you know to whom they were given. Well, Your Honor, each of the support staff, for example, worked under the supervision of the attorneys in this case. And those are the only representations that ever could have been made, including the paralegal representing to the attorneys that they have destroyed the documents and have not used them outside of this litigation. Well, so that means it should be really easy. You can, of course, be required to say who got them because all the representations are there. Is that what you're saying? They're trying to make you prove a negative, basically. There's no evidence that this happened. It's just speculation, hypothetical. Exactly. They're ordering you to prove a negative. I mean, we don't normally do that. Yes, sir. Maybe, maybe. I'm not surprised you're agreeing with him. Maybe. I don't understand what the negative point is. All you want to do is you want a representation that no one has a copy, okay, and the only representations you care about are people who had access, right, because they're the only ones that could make the copy. So it's not so much that anyone wants that they have any right to know every person that has knowledge about it. I get that point. What I don't understand is why the only representation that would count is it's not about negatives. It's about people that had access or actually had it, not access, had physical copies, just making sure they didn't make copies. That is the representation that we have made in the letter by affirming that we've conducted a search to find any and all and destroying them. That's pretty much all we would be able to give the court, and the point that Judge Griffin makes is a listing of who those specific attorneys and paralegals would have been doesn't redress anything because the court operates from a presumption that the protective order was complied with. No, I don't want the list either. I just want a representation from everyone that had their hands on it. That seems to be to get to their same point and seems more legitimate. I don't believe that that redresses an open injury, Your Honor. They may want that, but it doesn't redress any injury because the documents have been destroyed, so there's nothing for this court to order with respect to them. Judge Guy, did you have a follow-up question? No, I think you asked the follow-up question. Well, I think we understand your argument, so thank you very much. Thank you, Your Honor. Appreciate it. Mr. Turszynski, you have rebuttal? Thank you, Your Honor. A couple of points. I'd like to point the court to the case of Mansfield v. Swan. It was cited in our briefs. It's 111 U.S. 379 from 1884. The court vacated a discovery order for lack of jurisdiction and awarded costs, so I think there are things that this court can do, and vacating the opinion below for lack of jurisdiction is important for us. I also point this court again to what the Seventh Circuit did in Whitford v. Voss following Rucho. The deposition hadn't yet occurred, and the appeals court said in its opinion, we are following Munsingware and vacating this discovery order. So the Seventh Circuit clearly didn't think, as Judge Griffin possibly suggested, that the vacating of the final order by the Supreme Court, actually there was no final order in that case because it didn't go to trial, but the conclusion of that case did not, or the dismissal of that case did not in the Seventh Circuit's mind erase the discovery order compelling the deposition of the Speaker of the House, and the case number of the Seventh Circuit is 19-2066. I don't believe it was a published order, but it was issued by the Seventh Circuit, basically in a very similar context to what we're asking you to do here, which is grant a Munsingware vacator of an opinion that otherwise could be used against our client in the future. It's the same concern that Speaker Voss had when he went to the Seventh Circuit and asked that the discovery order be vacated because that alone eliminates the mootness issue here, and that's why we're here asking you to do that. With respect to kind of who might have had our documents, there were multiple experts in this case. There were multiple paralegals involved. There were court reporters. What part of their representation, though, isn't in good faith trying to cover the waterfront? Well, Your Honor, we don't know which of their experts had it. These experts that are in the – Since you don't know, we're supposed to keep the case alive, and just because you don't know I don't think is a really good reason to keep the case going. Your Honor, keep the focus on the words of the representation and why they come up short. Sure. Why they come up short is they tell us that they have looked for anybody that had copies, but they don't tell us who those people are, and that's important because in this redistricting world you often see repeat players. Covington and Burling is in a number of these cases. Covington and Burling is here. They're all gone now, aren't they? No, because now they're playing out in state court, Your Honor, and they're playing out in Section 2 cases around the country, and they're playing out in state courts around the country. So even though partisan gerrymandering cases in federal courts are gone, you're still seeing the same experts in the Section 2 cases. You're still seeing the same experts in the state court cases. You're seeing the same law firms appear over and over again. The problem is knowledge, not document, because if they bring the document up, you'll be able to say, whoa, what happened here? Someone violated something, right? Yes, and you can't be worried about that because we already decided that. That's what you can fix at the next case. It comes back to knowledge. And the reason that we're seeking that knowledge is we're looking to this court to police the excess of jurisdiction of the court below here. And with that, I see I'm out of time unless the court has… Judge Guy, do you have any questions? Nothing further, thank you. All right, well, thanks to all of you for the briefs and arguments.  We always appreciate that, and the case will be submitted.